# United States Court of Appeals
# for the Federal Circuit

## DIGITAL ALLY, INC., a Nevada corporation,

*Plaintiff-Appellant,*

v.

## UTILITY ASSOCIATES, INC., a Delaware corporation,

*Defendant-Appellee.*

### 2014-1420

*Appeal from the United States District Court for the District Of Kansas in Case No. 2:13-cv-02550 – SAC - KGS, Senior Judge Sam A. Crow*

### CORRECTED NON-CONFIDENTIAL BRIEF OF DEFENDANT-APPELLEE UTILITY ASSOCIATES, INC.

Stephen M. Schaetzel
Nathan A. Sloan
Meunier Carlin & Curfman, LLC
817 W. Peachtree Street, Suite 500
Atlanta, Georgia 30309
Tel: (404) 645-7700
Fax: (404) 645-7707

*Counsel for Defendant-Appellee*

August 12, 2014

## CERTIFICATE OF INTEREST

Counsel for Utility Associates, Inc. certifies the following:

1.    The full name of every party or amicus represented by me is:

    Utility Associates, Inc.

2.    The name of the real parties in interest represented by me are:

    The party listed above is the real party in interest.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    Not applicable.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or are expected to appear in this court are:

**Meunier Carlin & Curfman, LLC**

Stephen M. Schaetzel
David S. Moreland
Nathan A. Sloan

**Shook, Hardy & Bacon LLP**

John D. Garretson

Date: August 12, 2014        */s/ Stephen M. Schaetzel*
        Stephen M. Schaetzel

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................... i

TABLE OF CONTENTS .................................................................. ii

TABLE OF AUTHORITIES ........................................................ iii-iv

STATEMENT OF RELATED CASES ............................................... v

I.    STATEMENT OF THE ISSUES ............................................ 1

II.   STATEMENT OF THE FACTS ............................................. 1

III.  SUMMARY OF ARGUMENT ................................................ 4

IV.   ARGUMENT ......................................................................... 5

V.    CONCLUSION AND REQUESTED RELIEF ...................... 19

CERTIFICATE OF FILING AND SERVICE ................................ 21

CERTIFICATE OF COMPLIANCE .............................................. 22

The material omitted on pages 1, 2, and 8 describe a possible joint business agreement between Digital Ally and Utility.

## TABLE OF AUTHORITIES

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
    960 F.2d 1020, 1043 (Fed. Cir. 1992)…………………………..………16

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
    480 U.S. 102 (1987)............................................................................ 15, 18

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
    566 F.3d 1012 (Fed. Cir. 2009)...................................................... 9

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
    552 F.3d 1324 (Fed. Cir. 2008) ................................................. 6, 7, 9, 13

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
    444 F.3d 1356 (Fed. Cir. 2006)........................................................ 14

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................... 5, 12, 15

*Corus Staal BV v. United States*,
    502 F.3d 1370 (Fed. Cir. 2007)....................................................... 18

*Deprenyl Animal Health, Inc. v. The Univ. of Toronto Innovations Foundation*,
    297 F.3d 1343 (Fed. Cir. 2002)........................................................ 5

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011) ...................................................................... 6

*Hanson v. Denckla*,
    357 U.S. 235 (1958) ................................................................. 5, 13

*Int'l Shoe Co. v. Wash.*,
    326 U.S. 310 (1945)................................................................... 5, 19

*Radio Sys. Corp. v. Accession, Inc.*,
    638 F.3d 785 (Fed. Cir. 2011) ....................................................... 6, 9, 10

*Radio Sys. Corp. v. Tom Lalor & Bumper Boy, Inc.*,
    709 F.3d 1124 (Fed. Cir. 2013)....................................................... 17

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
 148 F.3d 1355 (Fed. Cir. 1998) .................................................. 7, 14, 16, 18

*Sage Prods., Inc. v. Devon Indus., Inc.*,
 126 F.3d 1420 (Fed. Cir. 1997)................................................................. 18

*Silent Drive, Inc. v. Strong Indus., Inc.*,
 326 F.3d 1194 (Fed. Cir. 2003) ........................................................ 7, 13, 18

*World-Wide Volkswagen Corp. v. Woodson*,
 444 U.S. 286 (1980)............................................................................ 12, 16

## STATEMENT OF RELATED CASES

No appeal in or from the same civil action or proceeding in the lower court was previously before this or any other appellate court. This appeal stems from a declaratory judgment action filed by Digital Ally regarding U.S. Patent No. 6,831,556. There is another case now pending in the Northern District of Georgia for patent infringement, filed by Utility Associates, for infringement of U.S. Patent No. 6,831,556: *Utility Associates, Inc. v. Digital Ally, Inc.*, No. 1:14-cv-01847-RWS (N.D. Ga., Atlanta Division). There is a second case pending in Kansas filed by Digital Ally, which is currently subject to a motion to dismiss for lack of jurisdiction, for tortious interference, defamation, breach of an employment agreement, and violating trade secrets that may also be affected by this Court's decision: *Digital Ally, Inc. v. Utility Associates, Inc. et al.*, Case No. 2:14-cv-02262-CM-KMH (D. Kan.).

CONFIDENTIAL MATERIAL REDACTED

## I.    STATEMENT OF THE ISSUES

Whether the district court was correct in finding no specific personal jurisdiction where defendant Utility entered the forum, prior to owning the '556 patent, for a ten-minute meeting with Digital Ally to discuss a cooperative business arrangement that never materialized, and had not engaged in activities enforcing the '556 patent in the forum against Digital Ally.  Additionally, whether this Court should ignore longstanding Supreme Court precedent that personal jurisdiction must be based on acts of the defendant and find that inaction by an unnamed predecessor-in-interest by not enforcing the '556 patent against Digital Ally can confer personal jurisdiction upon Utility.

## II.    STATEMENT OF THE FACTS

Utility and Digital Ally are competitors in the field of mobile digital information systems, particularly those used by police, fire, and emergency crews. Utility's headquarters are located in Georgia.  (A067.)  Utility has no offices in Kansas, no employees in Kansas, and is not registered to do business in Kansas. (A068.)

In 2011, Digital Ally and Utility engaged in sporadic discussions regarding the possibility of a business agreement.  (A002-004.)  An initial letter of understanding dated September 29, 2011 documents the scope of ███████████

████████████████████████████████████████████████

████████████████.)[1]  It describes how Digital Ally and Utility intended to

work together to market, sell, and support products.  (A076.)  It explains a number

of aspects of the potential marketing efforts, including sales commissions, how

purchase orders would be issued, and payment terms.  (A076-77.)

Ken McCoy, Vice President of Sales and Marketing for Digital Ally,

described the possibility of the agreement as ████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████  Mr. McCoy asked to include Utility's technology as

part of a bid for one of its customers.  (A208.)

In November 2011, two representatives from Utility visited Digital Ally in

Kansas to discuss the potential business relationship.   (A003; A068-069.)  The

meeting lasted less than ten minutes and did not involve any discussion of patent

infringement or the '556 patent.  (A003-04; A069.)  Discussions regarding the

potential business relationship between the parties ceased shortly thereafter and

never resumed.  (A004; A483 at ¶ 8.)

Utility acquired the '556 patent in early 2013, more than a year after

conclusion of the limited discussions about a possible joint business venture.

---

[1] Utility has redacted this information out of an abundance of caution based on
Digital Ally's motion to seal at the district court, although Utility notes that Digital
Ally has quoted this letter without any redaction in its appellant brief.  (DA Br. at
7; A237-239.)

(A004; A068.)  In fall of 2013, Utility sent sales letters indicating potential customers "should consider purchasing its mobile video surveillance system needs from Utility" in part because of the protection offered by the '556 patent. (A004-005; A037.)

Utility did not send the letter to Digital Ally.  (A005; A069.)  The letter does not mention Digital Ally or any of its products.  (A004-005; A037.)  No claim charts were attached to the letter.  Instead, the purpose of the letter was to promote sales of Utility's own products and leverage Utility's patent protection.  (A037.) Digital Ally's complaint for declaratory judgment relies on substantially identical copies of the letter sent to the State of Nebraska and the State of New York. (A004-005; A029.)  Digital Ally filed its complaint eleven days after Utility sent the sales letter to these potential customers soliciting their business.  Digital Ally makes no allegation that the letter was sent to one of its customers in the forum state of Kansas.  (A005.)

Digital Ally's statement of facts also discusses the alleged inaction of Utility's predecessor-in-interest who owned the '556 patent.  (DA Br. at 5.)  The predecessor-in-interest is not named, and Digital Ally has not alleged any privity relationship between the predecessor-in-interest and Utility.  (*Id.*)  Digital Ally does not allege that the predecessor-in-interest attempted to enforce the '556 patent or had a duty to speak about possible infringement.  (*Id.*)  The complaint and

briefing do not provide any meaningful detail regarding the alleged "failure to mention" possible infringement. (*See* DA Br. at 5; A032 at ¶ 15.) Digital Ally does not allege that the predecessor-in-interest ever made an affirmative representation that it would not enforce the '556 patent.

## III.   SUMMARY OF THE ARGUMENT

Digital Ally presents two arguments in support of specific jurisdiction. First, Digital Ally argues that discussion with Utility regarding a marketing agreement, and a single visit to Kansas more than a year before Utility acquired the '556 patent, should be considered "enforcement of the patent." The district court properly assumed the truth of all of Digital Ally's assertions and concluded that "the undisputed facts show that the communications between Plaintiff and Defendant in Kansas occurred long before Defendant acquired the '556 patent, and were focused on the creation of a cooperative business arrangement to market products." (A009.) Accordingly, those contacts "were of an entirely different nature than enforcement-related activities in the forum which could support specific jurisdiction." *Id.*

Second, Digital Ally argues that it was improper for the district court to not discuss whether the failure to mention possible infringement by a predecessor-in-interest should bind Utility for personal jurisdiction purposes. Digital Ally did not raise this argument as a basis for jurisdiction in either its

complaint or the briefing associated with the motion to dismiss.  Nonetheless, the

Supreme Court and this Court have both consistently held that personal jurisdiction

must be based on acts of the defendant.  The alleged silence ("failure to mention")

of a predecessor-in-interest therefore cannot bind Utility for jurisdictional

purposes.

## IV.   ARGUMENT

Due process rights protect a defendant from being subject to personal

jurisdiction absent minimum contacts with the forum "such that the maintenance of

the suit does not offend 'traditional notions of fair play and substantial justice.'"[2]

*Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal citations omitted).  It is

"essential in each case that there be some act by which the defendant purposefully

avails itself of the privilege of conducting activities within the forum State, thus

invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S.

235, 253 (1958).  "This 'purposeful availment' requirement ensures that a

defendant will not be haled into a jurisdiction solely as a result of 'random,'

'fortuitous,' or 'attenuated' contacts, . . . or of the 'unilateral activity of another

party or a third person'".  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475

(1985) (internal citations omitted).

---

[2] The Kansas long arm statute authorizes personal jurisdiction to the full extent of the due process clause.  *See*, *e.g.*, *Deprenyl Animal Health, Inc. v. The Univ. of Toronto Innovations Foundation*, 297 F.3d 1343, 1350 (Fed. Cir. 2002) (citations omitted).

General and specific jurisdiction are two distinct concepts that should not be blended together.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).  General jurisdiction may exist where, although a plaintiff's claims "do not arise out of or relate to the defendant's contacts with the forum State," the contacts are sufficiently continuous and systematic to support personal jurisdiction.  *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1330 (Fed. Cir. 2008).  Specific jurisdiction may stem from reduced contacts with the forum state, but those contacts must arise out of or relate to the cause of action.  *Id.*

Digital Ally does not appeal on general jurisdiction grounds, only specific jurisdiction.  For specific personal jurisdiction to exist, there must be activity that "arises out of or relates to the activities of the defendant patentee <u>in enforcing the patent</u> or patents in suit*." Id.* at 1332 (emphasis added).  In particular, "to what extent has the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum,' and the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'" *Id.* (internal citations omitted).

Marketing efforts and efforts to commercialize products do not constitute enforcement of the patent.  *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789-90 (Fed. Cir. 2011).  Letters presenting infringement allegations, sent directly to a declaratory judgment plaintiff in the forum state, are also insufficient activity

to support specific jurisdiction. *Avocent,* 552 F.3d at 1332. Exercising personal jurisdiction in either situation would not comport with principles of fair play and substantial justice. *See id.* at 1333; *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359-60 (Fed. Cir. 1998). Instead, there must be activities "directed at the forum <u>and related to the cause of action</u> besides the letters threatening an infringement suit." *Avocent,* 552 F.3d at 1333 (quoting *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003) (emphasis in original).

### A. Utility's marketing efforts did not relate to enforcement of the patent.

"[W]e have consistently required the defendant to have engaged in 'other activities' that relate to the <u>enforcement</u> or the <u>defense of the validity</u> of the relevant patents." *Avocent*, 552 F.3d at 1334 (emphasis in original). Examples of additional enforcement activities include bringing a patent infringement suit in the forum or "entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Id.* No such other enforcement activities exist here. While exclusive license agreements or another patent suit may, at times, support specific personal jurisdiction, "the defendant patentee's own commercialization activity does not." *Id.* at 1335.

7

Utility's contacts with Digital Ally in Kansas occurred more than a year before Utility acquired the '556 patent. Utility and Digital Ally discussed commercialization efforts to market and sell product lines. (A076-078, A195, A196.) The communications led to a single, at most ten minute meeting in November 2011, which did not result in a joint venture. (A003-004; A069 at ¶ 10.) A letter of understanding confirms that the parties initially sought to engage in a marketing and sales relationship to market, sell, and support joint product lines. (A003; A076-78.) It explains a number of aspects of the marketing efforts, including sales commissions, how purchase orders would be issued, and payment terms. (A076-77.) Digital Ally's Vice President of Sales and Marketing described the arrangement as a ███████████████████████████ ██████████████████ The letter of understanding does not mention possible patent infringement or the '556 patent. (*See* A076-77.) The district court properly found that these contacts were made "regarding a potential joint business relationship between the parties". (A002.)

Indeed, Digital Ally does not allege that any of these discussions involved the '556 patent. The parties agree that the potential relationship ended by November 2011. (DA Br. at 22.) Utility acquired the '556 patent in early 2013, over a year after the final, and only, meeting with Digital Ally. (A004.) Marketing efforts prior to Utility even owning the '556 patent cannot relate to enforcement of

8

the patent.  No claim charts were provided, no infringement discussion occurred.

"[T]he e-mails and letters . . . are insufficient to give rise to personal jurisdiction . . .

. ." *Radio Sys. Corp.*, 638 F.3d at 791.   And, Digital Ally has made no argument

that Utility threatened it with enforcement of the '556 patent before it filed suit.  In

summary, "[n]owhere in these documents does [the declaratory judgment plaintiff]

identify activities purposefully directed at the forum and related in any material

way to the enforcement or defense of the validity of the patent[] at issue.  This

critically undermines its assertion of specific personal jurisdiction." *Avocent*, 552

F.3d at 1338.

     This Court has previously addressed whether marketing arrangements could

serve as the basis for personal jurisdiction.  A "defendant patentee's mere acts of

making, using, offering to sell, selling, or importing products—whether covered by

the relevant patent(s) or not—do not, in the jurisdictional sense, relate in any

material way to the patent right that is at the center of any declaratory judgment

claim for non-infringement, invalidity, and/or unenforceability." *Avocent*, 552

F.3d at 1336.  "While such activities may in the aggregate justify the exercise of

general jurisdiction . . ., they do not establish a basis for specific jurisdiction in this

context." *Id; see also Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d

1012, 1019-20 (Fed. Cir. 2009) ("the contacts material to specific jurisdiction

analysis in a declaratory judgment action are not just any activities related to the

patent-at-issue. Rather the relevant activities are those that . . . relate in some material way to the enforcement or defense of the patent.")

In another case, the declaratory judgment defendant notified the plaintiff that its patent had issued and proposed a marketing agreement. *Radio Sys. Corp.*, 638 F.3d at 787-788. The parties exchanged correspondence for several months without reaching agreement in 2007. *Id.* In 2009, the defendant again reached out regarding a marketing agreement and the parties signed a nondisclosure agreement that included a forum selection clause, including language that defendant "consents to the personal jurisdiction" of the forum. *Id.* at 788, 792. After signing the nondisclosure agreement, the defendant also traveled to the forum state to demonstrate a device and discuss a marketing proposal directly with the plaintiff. *Id.*

"[N]ot all of a patentee's activities in the forum state are sufficient to create a basis for asserting personal jurisdiction." *Id.* at 789. The defendant's correspondence "was focused on generating a market for the [product], not on enforcing or defending the [asserted] patent." *Id.* at 790. An effort "to commercialize his invention therefore does not render [] activities in [the forum State] sufficient for the exercise of specific jurisdiction." *Id.* The communications between the parties "focused on the creation of a cooperative business arrangement

10

to market the [product] and thus was of an entirely different nature than the

enforcement-related activities in *Electronics for Imaging*." *Id.* at 791.

Accordingly, the district court's decision properly follows the decisions and

mirrors past language of this Court. "[O]nly those activities of the patentee that

relate to the enforcement or defense of the patent can give rise to specific personal

jurisdiction." (A008.) "[W]here a patent holder's contacts within the state with a

potential supplier are focused on generating a market for [a] product, not on

enforcing or defending [a] particular patent, those contacts are insufficient for the

exercise of specific personal jurisdiction in the state." (*Id.*) The minimal contacts

between Utility and Digital Ally "in Kansas occurred long before Defendant

acquired the '556 Patent, and were focused on the creation of a cooperative

business arrangement to market products." (A009.) Therefore, "[t]hose contacts

were of an entirely different nature than enforcement-related activities in the forum

which could support specific jurisdiction." *Id.* Were this Court to allow marketing

efforts occurring well in advance of a patent being acquired to serve as the basis

for contacts that "arise out of or relate to" the cause of action, the realm of specific

jurisdiction would expand dramatically. Declaratory judgment plaintiffs would

rely on far more attenuated contacts to establish specific jurisdiction than

envisioned by the due process clause.

Digital Ally also argues that Utility's limited contacts "were instrumental in,

11

and perhaps what gave rise to, the decision to acquire the '556 Patent". (DA Br. at 22.) Nothing in the record supports this conjecture. To the contrary, Digital Ally admits that the relationships between Digital Ally and Utility ceased by November 2011. (DA Br. at 22.) Utility did not send the sales letter notifying potential customers of its patent protection to Digital Ally. It did not threaten Digital Ally with infringement. There simply is no evidence, whether during the negotiations or in the subsequent letter, that Utility has tried to do anything other than sell its products. While evaluating infringement does involve claim construction and comparing construed claims to a device accused of infringement, that analysis comes only when the court has jurisdiction over the parties. Because Utility had not, at the time that Digital Ally filed its complaint, threatened Digital Ally with any patent enforcement action, specific jurisdiction does not exist.

## B. Utility's contacts with Kansas were isolated and sporadic.

Even if Utility had owned the '556 patent during the commercialization efforts and such contacts could be considered to be related to "the enforcement or defense of the patent," its minimal communications and a single trip to Kansas are the very type of isolated, sporadic contacts that do not result in a defendant reasonably expecting to be haled into court. *See Burger King Corp.*, 471 U.S. at 486 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The "'purposeful availment' requirement ensures that a defendant will not

be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or

'attenuated' contacts." *Burger King Corp.*, 471 U.S. at 475. Utility has no offices

in Kansas, no employees in Kansas, and is not registered to do business in Kansas.

(A068.)

Utility made a single trip to Kansas that lasted approximately ten minutes (or

less) and did not culminate in a shared business relationship. (A068-69.) No

continuing business agreement resulted; no follow-up trip was made. Nearly two

years then passed after the meeting before Digital Ally brought its declaratory

judgment action. This Court has found considerably more significant contacts with

the forum state to fall short of conveying specific jurisdiction. *Silent Drive, Inc.*,

326 F.3d at 1197, 1202 (letters threatening infringement and other contacts with

the forum including entering two agreements that terminated, demonstrating

products at a trade show, visiting the forum, and limited sales "were sporadic and

do not concern the [asserted] patent. There is thus no personal jurisdiction" for

declaratory judgment of non-infringement).

### C. Utility's letter was not "purposefully directed" at residents of the forum and does not constitute enforcement activity.

It is "essential in each case that there be some act by which the defendant

purposefully avails itself of the privilege of conducting activities within the forum

state . . . ." *Hanson*, 357 U.S. at 253. As found by the district court, Utility's

"letters were not sent to Plaintiff and are not alleged to have been sent to any of

13

Plaintiff's customers in Kansas." (A005.) Thus, there is no act by which Utility purposefully directed activity within the forum state. *Avocent,* 552 F.3d at 1332 ("[t]he relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum'").

Utility sent a sales letter to potential customers indicating they "should consider purchasing its mobile video surveillance system needs from Utility" in part because it has the protection offered by the '556 patent. Utility had not engaged in *any* patent enforcement activities against Digital Ally when this lawsuit was filed. The letter does not mention Digital Ally or its products. (A037.) The district court therefore correctly held: "even if the Court construed Defendant's letters as cease-and desist [sic] letters, and even had Defendant sent them to Plaintiff's customers in Kansas, that alone would be insufficient to subject Defendant to personal jurisdiction in Kansas." (A009-010 citing *Red Wing Shoe Co.*, 148 F.3d at 1360-61); *see also Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.,* 444 F.3d 1356, 1362 (Fed. Cir. 2006) (a "patent owner may, without more, send cease and desist letters to a suspected infringer, or its customers, without being subjected to personal jurisdiction in the suspected infringer's home state") (emphasis added).

## D. Supreme Court precedent requires that personal jurisdiction be based on acts of the defendant.

Digital Ally also argues that Utility should be bound, for personal jurisdiction purposes, based on inaction by a predecessor-in-interest in remaining allegedly silent about Digital Ally's infringement. The Supreme Court has declined to find personal jurisdiction based on actions from someone other than the defendant in a long line of cases. "Jurisdiction is proper . . . .where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp.*, 471 U.S. at 475 (emphasis in original). The connection required for due process to be satisfied "must come about by *an action of the defendant purposefully directed toward the forum State.*" *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987) (emphasis in original).

Digital Ally does not point to an action that Utility itself purposefully directed toward the forum State. Digital Ally does not even point to foreseeable actions of one of Utility's customers. Instead, Digital Ally seeks to establish personal jurisdiction based on the *in*action of an unnamed predecessor-in-interest in choosing to not enforce the '556 patent. But personal jurisdiction is a personal issue to the defendant in a suit. *See Burger King Corp.*, 471 U.S. at 475. Jurisdiction is only proper where the defendant can reasonably expect being haled into court, which cannot be based on unknown inaction of a prior patent owner.

15

In addition, extending personal jurisdiction based on an equitable estoppel theory lacks foundation in the facts of this case. Digital Ally has not alleged facts sufficient to subject the predecessor-in-interest to personal jurisdiction. Digital Ally has not named the predecessor-in-interest. It has not indicated how many meetings occurred between Digital Ally and the predecessor-in-interest, or the subject of those meetings. Digital Ally does not even allege the predecessor-in-interest attempted to enforce the '556 patent against it. Instead, it alleges the predecessor-in-interest remained silent, but fails to allege or show that there was any obligation to speak that could give rise to an equitable estoppel theory. *See A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1043 (Fed. Cir. 1992) ("silence alone will not create an estoppel unless there was a clear duty to speak"). As a result, Digital Ally has not even sufficiently pled that a predecessor-in-interest's inaction would give rise to equitable estoppel.

Utility had no expectation of being haled into court in Kansas based on the alleged inaction of a predecessor-in-interest. *See, e.g., World-Wide Volkswagen*, 444 U.S. at 297 (requiring "clear notice that it is subject to suit there"). In summary, Digital Ally has not alleged continuous and systematic contacts that could support general jurisdiction, nor has it alleged action to enforce the patent by the predecessor-in-interest that could support specific jurisdiction. Accordingly, there is no jurisdictional foundation to "transfer" to Utility, if such a legal theory

16

came into existence.

In *Red Wing Shoe*, this Court explained that "[i]n simple terms, doing business with a company that does business in [the forum State] is not the same as doing business in [the forum State]." *Red Wing Shoe Co.*, 148 F.3d at 1361. Summarizing Supreme Court precedent that "contacts resulting from 'the unilateral activity of another party or third person' are not attributable to a defendant," the Court pointed out that plaintiff's "flawed theory would subject a defendant to nationwide personal jurisdiction if it decides to do business with a company that does business nationwide." *Id.* at 1361 (internal citations omitted).

Multiple entities owned the '556 patent before Utility. Doing business with those entities in the sense of acquiring a patent that they had previously owned is not the same as doing business in Kansas, even if one of the prior owners had discussions with Digital Ally. Digital Ally has not alleged that Utility had knowledge of the unnamed predecessor-in-interest's inaction or was in a privity relationship with the predecessor-in-interest. *See Radio Sys. Corp. v. Tom Lalor & Bumper Boy, Inc.*, 709 F.3d 1124, 1131 (Fed. Cir. 2013) ("equitable estoppel applies to successors-in-interest *where privity has been established*") (emphasis added). None of the cases cited by Digital Ally support extending equitable estoppel to Utility in this situation, let alone finding personal jurisdiction based on an equitable estoppel theory.

17

Finally, Digital Ally has argued that the inaction by Utility's unnamed predecessor-in-interest should bind Utility for jurisdictional purposes for the first time on appeal. The complaint does not mention equitable estoppel principles in its jurisdictional statement (A030-031 at ¶ 10), and Digital Ally did not make its equitable estoppel argument to the district court. *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("If a litigant seeks to show error in a trial court's overlooking an argument, it must first present that argument to the trial court. In short, this court does not 'review' that which was not presented to the district court.") Digital Ally has failed to place their equitable estoppel argument before the trial court for consideration even though the issue of personal jurisdiction was squarely at issue. Digital Ally has therefore forfeited its argument that equitable estoppel should support specific jurisdiction. *See Corus Staal BV v. United States*, 502 F.3d 1370, 1378 n.4 (Fed. Cir. 2007).

### E. Allowing this action to proceed would not be fair and reasonable.

As shown above, this Court has repeatedly confirmed that exercising personal jurisdiction based on a letter sent into the forum state without additional enforcement related activities in the forum state would not comport with fair play and substantial justice. *See, e.g., Red Wing Shoe Co.*, 148 F.3d at 1360 ("cease-and-desist letters alone do not suffice to create personal jurisdiction"); *Silent Drive, Inc.*, 326 F.3d at 1202 ("letters threatening suit for patent

infringement sent to the alleged infringer by themselves 'do not suffice to create personal jurisdiction'"); *see also id.* ("We have decided under the [question of whether asserting jurisdiction is reasonable and fair] the sending of letters threatening infringement litigation is not sufficient to confer personal jurisdiction."). Consistent with prior precedent, exercising personal jurisdiction over Utility would not comport with the due process clause. The due process clause does "not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." *Int'l Shoe Co.*, 326 U.S. at 319.

## V. CONCLUSION AND REQUESTED RELIEF

Digital Ally's brief argues that two novel issues are presented to this Court, but no law supports its positions. The issues presented on this appeal are, instead, well settled, and the district court properly dismissed Digital Ally's complaint for lack of personal jurisdiction. Utility therefore requests that the judgment below be affirmed.

Dated: August 12, 2014   Respectfully submitted,

        */s/ Stephen M. Schaetzel*
        Stephen M. Schaetzel
        Nathan A. Sloan
        Meunier Carlin & Curfman, LLC
        817 W. Peachtree Street, Suite 500
        Atlanta, GA 30308

Telephone: (404) 645-7724
Facsimile:  (404) 645-7707
Email: sschaetzel@mcciplaw.com

*Counsel for Defendant-Appellee*
*Utility Associates, Inc.*

## CERTIFICATE OF FILING AND SERVICE

The undersigned hereby certifies that, on this 12th day of August 2014, I

have electronically filed the foregoing **CORRECTED NON-CONFIDENTIAL**

**BRIEF OF DEFENDANT-APPELLEE UTILITY ASSOCIATES, INC.** with

the Clerk of the Court using the CM/ECF system, which will automatically send e-

mail notification of such filing to the following attorney of record:

> Adam P. Seitz
> adam.seitz@eriseip.com
> Eric A. Buresh
> eric.buresh@eriseip.com
> Erise IP, P.A.
> 6201 College Boulevard
> Suite 300
> Overland Park, Kansas 66211
> Telephone: (913) 777-5600
> Facsimile: (913) 777-5601

> *Counsel for Appellant*

The undersigned further certifies that, upon acceptance and request from the

Court, the required paper copies of the foregoing will be deposited with Federal

Express for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR

THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

> /s/ *Stephen M. Schaetzel*
> Stephen M. Schaetzel
> Meunier Carlin & Curfman, LLC
> 817 W. Peachtree Street, Suite 500
> Atlanta, GA 30308

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e) because:

> this brief contains 4,439 words excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because:

> this brief has been prepared in a proportionally spaced typeface using Times New Roman 14.

Dated:  August 12, 2014

/s/ *Stephen M. Schaetzel*
Stephen M. Schaetzel
Meunier Carlin & Curfman, LLC
817 W. Peachtree Street
Suite 500
Atlanta, GA 30308
Telephone: (404) 645-7724
Facsimile:  (404) 645-7707
E-mail:  sschaetzel@mcciplaw.com

*Counsel for Defendant – Appellee*
*Utility Associates, Inc.*